# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF MUSKEGON

Lamar OCI North Corporation,

      Appellant/Plaintiff,

v.

City of Norton Shores,

      Appellee/Defendant.

Case No. 05-43703 -NO

**THIS CASE ASSIGNED TO**
Hon. **JUDGE TIMOTHY G. HICKS**

**CLAIM OF APPEAL AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

_____

**BODMAN LLP**
By:    James J. Walsh (P27454)
        J. Adam Behrendt (P58607)
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
(248) 743-6000
Attorneys for Appellant/Plaintiff

_____

**There is no other civil action between these parties arising out of the same transactions as alleged in this complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.**

MUSKEGON CO. CLERK

2005 FEB 16 A 9: 57

FILED

Troy_360874_2

## CLAIM OF APPEAL AND COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

Appellant/Plaintiff Lamar OCI North Corporation files this claim of appeal and complaint arising from the November 24, 2004 decision of the City of Norton Shores Zoning Board of Appeals denying Lamar's request for an interpretation of the City of Norton Shores' zoning ordinance or, in the alternative, the grant of a variance to restore the sign face to Lamar's outdoor advertising structure located at 2780 Henry Street and states as follows:

1. Lamar is a Delaware corporation that is qualified to conduct business in Michigan.

2. Defendant/Appellee Norton Shores is a Michigan municipal corporation organized under the Michigan Home Rule City Act and located in Muskegon County, Michigan.

3. The Muskegon County Circuit Court has jurisdiction over Lamar's claim of appeal under MCLA § 125.585(11) and MCR 7.101.

4. This Court has jurisdiction over Lamar's complaint because it seeks equitable and declaratory relief.

5. Venue is proper in this judicial district for Lamar's complaint.

### CLAIM OF APPEAL

6. Lamar is an outdoor advertising company. Lamar erects outdoor advertising displays, commonly known as billboards, throughout Michigan on property it leases or, in some cases, owns. Lamar earns revenue by charging advertisers to display their messages on its billboards.

7.      Lamar owns a billboard located at 2780 Henry Street in Norton Shores (the "Billboard").

8.      Norton Shores regulates signs in Section 14.101 of Article XIV of its zoning ordinance.

9.      Although lawfully erected, the Billboard is now non-conforming under Norton Shores' zoning ordinance.

10.     In relevant part, Section 14.101 of Norton Shores' zoning ordinance provides:

> "12.   *Maintenance*. All signs shall be kept clean and in a good state of repair. Signs which are not maintained or which no longer serve the purpose for which they were permitted, or which have been abandoned, shall be removed by the latest owner.
>
> "13.   *Nonconforming signs*. Every sign or other advertising structure in existence on adoption of this Sign Ordinance which violates or does not conform to the provisions hereof, shall not be renovated, altered or moved unless it be made to comply with the provisions of this Sign Ordinance, except that this provision shall not prevent the owner from changing the advertising copy of a nonconforming sign and except further that this provision shall not prevent the Board of Appeals from granting authorization to alter, renovate or move a non-conforming sign or substitute another sign for a nonconforming sign if said authorization reduces the degree of nonconformance. An existing freestanding sign may be repaired or replaced with a new freestanding sign not to exceed the height of the existing sign, twenty (20) feet, or the maximum size permitted in the corresponding zoned district, whichever is lesser." See **Exhibit A** (Article XIV of Norton Shores' zoning ordinance).

11.     In August 2002, Lamar began a refurbishment project of all of its billboards in Norton Shores, including the Billboard, intending to replace their existing faces and reduce their overall size and non-conformity by approximately 21%. All of the billboards' support structures, however, would remain unmoved and unchanged.

3

12.     In the middle of the project and while the Billboard's sign face had been removed, officers of Norton Shores Police Department ordered Lamar's contract workers to cease their work on the Billboard or face arrest and cited them for alleged civil infractions

13.     Although the Billboard's support structure is still in place, Norton Shores has refused to allow Lamar to complete its refurbishment project or restore the removed sign face to the Billboard.

14.     On September 29, 2004, Lamar submitted a building permit application to Norton Shores' Building Department. Concurrently, Lamar submitted a letter to Norton Shores' attorney, Douglas Hughes, explaining the basis of Lamar's request and its interpretation of Norton Shores' zoning ordinance that would allow the maintenance work to occur without a variance.

15.     On October 4, 2004 and in response to Lamar's letter, Community Development Director Richard J. Maher informed Lamar that its request to finish its maintenance project and replace the Billboard's face would require a variance from the Zoning Board of Appeals. Mr. Maher also stated that Lamar would need to seek a variance from the twenty-five-foot setback requirement for a sign in a C-2 General Retail District.

16.     Lamar requested that Norton Shores provide the basis for its interpretation of Norton Shores' zoning ordinance on October 8, 2004. See **Exhibit B**. To date, no response has been received.

17.     On October 18, 2004, Lamar filed a petition with Norton Shores Planning Commission/Zoning Board of Appeals requesting that Norton Shores provide the basis for its interpretation of the zoning ordinance or, in the alternative, grant the necessary

4

authorization/variance to restore the sign face of the Billboard because Lamar's maintenance project to the Billboard would lessen its overall size and, as a result, its nonconformity by approximately 21%.

18.    In particular, Lamar asserted in its petition that:

a.    Lamar is not required to obtain authorization or a variance from the Zoning Board of Appeals to complete its maintenance work on the Billboard because Section 14.101(12) of Norton Shores' zoning ordinance requires Lamar to keep its non-conforming billboards in "a good state of repair" and Section 14.101(12) does not require Lamar to first obtain approval or a variance from the Zoning Board of Appeals for the completion of such work.

b.    Lamar is not required to obtain approval or a variance from the Zoning Board of Appeals to complete its maintenance on the Billboard because Section 14.101(13) of Norton Shores' zoning ordinance states that "[a]n existing freestanding sign may be repaired or replaced with a new freestanding sign not to exceed the height of the existing sign, twenty (20) feet, or the maximum size permitted in the corresponding zoned district, whichever is lesser."   Although Section 14.101(13) provides that non-conforming signs may not be "renovated, altered or moved unless it be made to comply with the provisions of this Sign Ordinance * * *," the final sentence of Section 14.101(13) does not condition Lamar's right to "repair[] or replace[]" the face of its billboard upon the approval or a variance from the Zoning Board of Appeals or otherwise require that an

5

existing nonconforming sign be brought into compliance with the Sign Ordinance. Moreover, the maintenance work that Lamar intends to complete on the Billboard will reduce its overall size by approximately 21% (and will be less than twenty feet in total height).

c.   Lamar's removal of the face of its Billboard does not require Lamar to bring its non-conforming Billboard into compliance with any setback requirements because Norton Shores' zoning ordinance does not contain a setback requirement for billboards in the C-2 General Retail District.

19.   Alternatively, Lamar requested in its petition that the Zoning Board of Appeals authorize and/or grant a variance to allow Lamar to complete its maintenance project and restore the sign face to the Billboard based upon the language of Section 14.101(13) of Norton Shores' zoning ordinance that provides:

> "Every sign or other advertising structure in existence on adoption of this Sign Ordinance which violates or does not conform to the provisions hereof, shall not be renovated, altered or moved unless it be made to comply with the provisions of this Sign Ordinance, except that this provision shall not prevent the owner of changing the advertising copy of a nonconforming sign and except further that this provision shall not prevent the Board of Appeals from granting authorization to alter, renovate or move a non-conforming sign or substitute another sign for a nonconforming sign if said authorization reduces the degree of nonconformance." (Emphasis added.)

20.   On November 9, 2004, the Planning Commission adopted a resolution recommending that the Zoning Board of Appeals deny Lamar's petition. Neither addressing Lamar's requests for an interpretation nor Lamar's alternative request for authorization/a variance based upon Section 14.101(13) of Norton Shores' zoning ordinance, the Planning Commission's minutes state that it "recommendation for denial was based on the fact that

6

[Lamar] is renovating, reconstruction [sic] and altering an existing non-conforming sign which is prohibited by the Zoning Ordinance." See **Exhibit C**.

21.     On November 24, 2004, the Zoning Board of Appeals affirmed the denial of Lamar's petition based upon the recommendation of the Planning Commission and its conclusion that renovation and/or alteration of an existing non-conforming sign is not permitted. See **Exhibit D**. Like the Planning Commission, the Zoning Board of Appeals did not address Lamar's requests for an interpretation nor, alternatively, Lamar's request for authorization/a variance based upon Section 14.101(13) of Norton Shores' zoning ordinance. Id.

22.     The minutes from the City of Norton Shores Zoning Board of Appeals' November 24, 2004 meeting were approved on January 26, 2005. See **Exhibit E**.

23.     Lamar appeals the decision of the Zoning Board of Appeals on the grounds that it reflects a misinterpretation of the relevant zoning ordinance provisions, is not in accord with MCLA § 125.585 and/or is not supported by the evidence on the record.

WHEREFORE, Lamar respectfully requests that the Court reverse the decision of the Zoning Board of Appeals and award such other relief as is just and equitable, including the entry of a final order requiring the Zoning Board of Appeals to issue the requested building authorization/variance necessary for Lamar to finish its refurbishment project and replace the Billboard's face.

## COMPLAINT

### COUNT I
### 42 USC § 1983 - VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS
### PRIOR RESTRAINT OF SPEECH

24.     Lamar restates paragraph nos. 1-23 as if set forth here fully.

7

25.     Section 14.101(13) of Norton Shores' zoning ordinance sets forth a permit scheme that allows the Zoning Board of Appeals to "grant[] authorization to alter, renovate or move a non-conforming sign or substitute another sign for a nonconforming sign if said authorization reduces the degree of nonconformance."

26.     The First and Fourteenth Amendments prohibit the delegation of overly broad discretion to government officials to control the exercise of free speech, including speech through the medium of outdoor advertising.

27.     Section 14.101(13) of Norton Shores' zoning ordinance does not contain clear, objective standards to govern the decision of the Zoning Board of Appeals to grant, deny or condition the issuance of the necessary authorization/permit to alter, renovate or move a non-conforming sign.

28.     Section 14.101(13) of Norton Shores' zoning ordinance violates the guarantee of free speech in the First and Fourteenth Amendments by giving undue discretion to the Zoning Board of Appeals to grant, deny or condition the issuance of the necessary authorization/permit to alter, renovate or move a non-conforming sign.

29.     A permit scheme, like Section 14.101(13) of Norton Shores' zoning ordinance, that requires advance authorization is a prior restraint on speech that will be deemed unconstitutional unless certain safeguards are met.  One of the necessary safeguards for such a permit scheme is the existence of a specified brief time period in which the decision to issue or deny the permit will be made.

30.     Norton Shores did not establish a specified brief time period in which it was required to issue or deny such authorization/permit under Section 14.101(13) of Norton Shores'

8

zoning ordinance to alter, renovate or move a non-conforming sign. Thus, Norton Shores' administration of Section 14.101(13) of Norton Shores' zoning ordinance constitutes an unconstitutional prior restraint on protected speech.

31.     A case of actual controversy exists between Lamar and Norton Shores under 28 USC § 2201 and Lamar respectfully requests that the Court enter a declaratory judgment in favor of Lamar declaring Section 14.101(13) of Norton Shores' zoning ordinance unconstitutional and providing that Lamar has the right to continue its refurbishment project and restore its sign face to the Billboard.

32.     Norton Shores' unconstitutional administration of Section 14.101(13) of Norton Shores' zoning ordinance was an act that was taken under color of state law and that deprived Lamar of rights and privileges granted to it by the First and Fourteenth Amendments of the United States Constitution.

33.     Lamar has been injured, through the denial of the ability to earn income and otherwise, by Norton Shores' unconstitutional denial of the necessary authorization/permit to continue its refurbishment project and/or restore the sign face to the Billboard on the basis of Section 14.101(13) of Norton Shores' zoning ordinance.

WHEREFORE, Lamar requests judgment in its favor declaring unconstitutional Section 14.101(13) of Norton Shores' zoning ordinance; enjoining Norton Shores from interfering with Lamar's refurbishment project and the restoration of the Billboard's sign face; awarding Lamar its attorney fees under 42 USC § 1988; and granting Lamar such further relief as the Court deems just.

9

Respectfully submitted,

BODMAN LLP

By: _____
        James J. Walsh (P27454)
        J. Adam Behrendt (P58607)
        201 W. Big Beaver Road, Suite 500
        Troy, MI 48084
        (248) 743-6000
February 15, 2005          Attorneys for Appellant/Plaintiff

10

Troy_360874_2

FILED

2005 FEB 16  A 9 57

15.945

## ARTICLE FOURTEEN (14)

**15.935**                        **SIGNS**

**15.940**    **Scope, intent and purpose.**

Sec. 14.100 The purpose of this section is to permit such signs as will not, by reason of their size, location, construction, or manner of display, endanger life and limb, confuse or mislead traffic, obstruct vision necessary for traffic safety, or otherwise endanger the public morals, health or safety; and further to regulate such permitted signs in such a way as to create land use patterns compatible with major land use objectives; to retard visual blights and to prevent such signs from causing annoyance or disturbance to the citizens and residents of the City.
(ord. no. 369 eff. June 26, 1981)

**15.945**    **General provisions.**

Sec. 14.101 The following conditions shall apply to all signs erected or located in any use district, except where specifically excluded herefrom.

1.  *Prohibited signs.* All signs which are not expressly permitted by this Ordinance are hereby prohibited. This prohibition is intended to include, but is not limited to, portable signs, such as teepee, triangular, fold up, roll-out or T-shaped signs not falling within the definitions of either freestanding, projecting or wall signs, and the prohibition also includes flags, banners, pennants and streamers other than the flag, emblem or insignia of a nation or political unit.

2.  *Permits.* All signs shall conform to the codes and ordinances of the City of Norton Shores. No sign shall be constructed, and no existing sign shall be renovated, altered, or moved unless a sign permit and necessary electrical permit is obtained from the Building and Zoning Administrator and Elec-

trical Inspector. A sign permit shall be issued by the Building and Zoning Administrator only if the proposed sign conforms in all respects to the provisions of this Ordinance, and other provisions of the Zoning Ordinance and Building Code of the City of Norton Shores. The sign permit fee schedule shall be determined by resolution of the City Council and a copy of said resolution shall be on file with the Building and Zoning Administrator. A permit shall not be required, however, for the performance of ordinary maintenance and repair.

3. *Advertising signs.* No sign shall be permitted except that which directs attention to a business or profession conducted as a permitted use, or to one principal commodity, service or entertainment sold or offered as a permitted use, upon the property where such sign is located. Provided, however, that off-premises advertising signs shall be permitted in the GI, General Industrial District, but must be located at least 100 feet but not more than 1,000 feet from the edge of the right-of-way of US-31; and provided further that such off-premises signs shall not be erected closer than 1,000 feet to another off-premises advertising sign on the same side of the highway.

4. *Interference with public right-of-way.* No sign or portion thereof, except those erected and maintained by the City, County, State or Federal governmental agencies to direct or control traffic, shall be located on or project into or overhang an area within ten feet of the edge of a public right-of-way or dedicated public easement unless the Building and Zoning Administrator determines that the sign is constructed, or otherwise situated, in such a manner that it does not obstruct pedestrian or vehicular vision of traffic. In no case, however, shall any sign or portion thereof, other than a traffic control or directional sign, be located on or project into or overhang a public right-of-way or dedicated public easement.

5. *Traffic signs.* All traffic directional and control signs required by City, County, State or Federal agencies shall be permitted in all use districts. No permit shall be required for such signs.

6. *Real estate signs.* Signs advertising land or buildings for rent, lease or sale shall be permitted when located on the land or building intended to be rented, leased or sold, subject to the regulations of the appropriate zoning districts.

7. *Confusion with traffic signs.* No sign shall be erected at any location where it may, by reason of its position, shape, color or other characteristics, interfere with, obstruct the view of, or be confused with any authorized traffic sign, traffic signal or other traffic device, nor shall any sign make use of the words "STOP", "LOOK", "TURN", "DANGER" or any other word, phrase, symbol or character in such a manner as to interfere with, mislead or confuse traffic.

8. *Lighting.* No sign with moving parts, motion pictures, changing colors or flashing or blinking lights, or any pictorial intermittent signs shall be permitted; except such signs as provide legitimate public services such as the giving of time and temperature; and provided that the flashing, or blinking, or pictorial intermittent portion of such signs shall be limited to that part of the total sign which provides such public service.

9. *Political signs.* All signs erected by candidates for an elective office shall be governed by the following requirements:

   a. No signs shall be erected more than 45 days prior to an election.

   b. All signs shall be removed within one week after the election.

   c. No sign shall be located on or project into or overhang an area within the edge of a public right-of-way or dedicated public easement.

   d. No sign shall be erected at any location where it may, by reason of its position, size,

shape, color or other characteristics, interfere with, obstruct the view of, or be confused with any authorized traffic sign, traffic signal or other traffic device, nor shall any sign make use of the words "STOP," "LOOK," "TURN," "DANGER" or any other word, phrase, symbol or character in such a manner as to interfere with, mislead or confuse pedestrian or vehicular traffic.

e. No sign shall contain moving parts, motion pictures, changing colors or flashing or blinking lights, or any pictorial intermittent signs.

f. All non-commercial political signs shall be limited in size as follows:

| Zone District | Size |
|---|---|
| R-1 through R-5 | 16 square feet |
| CR-6, AR-7, AR-8, AG, REC, PO, GO and C-1 | 32 square feet |
| C-2 and C-3 | 50 square feet |
| GI | 100 square feet |

10. *Signs on vehicles.* The provisions of this Ordinance are not applicable to bumper stickers or other types of signs affixed to vehicles where their presence thereon is only incidental to the primary purpose of said vehicles as transportation.

11. *Informational or directional signs.* No permit shall be required for informational or directional signs, as herein defined, having a maximum area of five square feet.

12. *Maintenance.* All signs shall be kept clean and in a good state of repair. Signs which are not maintained or which no longer serve the purpose for which they were permitted, or which have been abandoned, shall be removed by the latest owner, or by the City at the expense of such owner.

13. *Nonconforming signs.* Every sign or other advertising structure in existence on adoption of this Sign Ordinance which violates or does not conform to the provisions hereof, shall not be reno-

vated, altered or moved unless it be made to comply with the provisions of this Sign Ordinance, except that this provision shall not prevent the owner from changing the advertising copy of a nonconforming sign and except further that this provision shall not prevent the Board of Appeals from granting authorization to alter, renovate or move a nonconforming sign or substitute another sign for a nonconforming sign if said authorization reduces the degree of nonconformance. An existing freestanding sign may be repaired or replaced with a new freestanding sign not to exceed the height of the existing sign, twenty (20) feet, or the maximum size permitted in the corresponding zoned district, whichever is lesser.

14. *Projecting signs.* All projecting signs, other than informational or directional signs, in the following districts shall have a minimum clearance of 12 feet from ground level, with a maximum height of 25 feet or the roof line of the building from which the sign projects, whichever is less: PO Professional Office, GO General Office, C-1 Neighborhood Commercial, C-2 General Retail, C-3 Major Commercial, GI General Industrial.

15. *Wall signs.* All signs attached parallel to the wall of a building, including signs painted on the wall of a building, shall not exceed an area of 20 percent of the area of the side of the building on which said sign appears. No wall sign attached to a building shall project above the roof line of the building on which it appears, nor shall such sign project more than one foot from the face of the wall.

[16. Deleted by ord. no. 653 eff. May 17, 2002.]

17. *Mobile signs.* One mobile trailer type sign not exceeding 8 feet in length or 4 feet in height shall be permitted for a period not to exceed seven days for the purpose of advertising a new business, a related business or a new owner, lessee or franchise of an existing business, any of which condi-

tions has been in existence for a period not exceeding four months. Lighting of said sign shall conform to all provisions contained in Subsection 8 above. A permit shall be required prior to the sign being placed on the property. A mobile trailer type sign shall not be allowed in R-1, R-2, R-3, R-4, R-5 Residential Districts, CR-6 Cluster Districts or AR-7, AR-8 Apartment Districts.

18. *Ground sign* means a sign supported by a monument, placed in the ground surface and not attached to any building.

19. *Entranceway sign* means a ground sign that designates the street entranceway to a residential, industrial or commercial subdivision, apartment complex, condominium development, similar multi-parcel development or permitted institution, from a public right-of-way. The maximum height of any ground sign shall not exceed 10 feet.

20. *Height of ground sign or entranceway sign* means the vertical distance measured from the natural surface grade of the land without including any berm, landscaping, grading or other artificially or unnaturally constructed or raised portion of land beneath the midpoint of the face of the sign to the highest point of the sign or supporting structure.

(ord. no. 369 eff. June 26, 1981; ord. no. 453 eff. Feb. 16, 1988; ord. no. 653 eff. May 17, 2002)

## 15.950   District requirements.

Sec. 14.102  In addition to the requirements of Section 14.101 [15.945], the following requirements shall apply to signs in various zoning districts.
(ord. no. 369 eff. June 26, 1981)

## 15.951   1. Residential Districts R-1 through R-5; signs permitted.

A.   One unlighted name place not over two square feet in area for each dwelling unit, no permit required for such sign.

B.   One unlighted real estate sign advertising the sale or rental of only the premises on which it is maintained, and not exceeding a total area of 8 square feet for any parcel with less than 250 feet of street frontage or an area not exceeding the lesser of one square feet for each thirty feet of frontage or 20 square foot for parcels with greater than 250 feet of street frontage. No permit shall be required for such sign.

C.   On temporary sign not exceeding 20 square feet in area in real estate development containing 25 or more lots.

D.   One freestanding sign for any church, schoo' public institution or nonprofit organization (suc. as a club or fraternal or religious organization), provided that such sign is only used for the purpose of announcing the name of the organization and the general nature and time of its activities but contains no commercial brand name nor trademark advertising. The size of such sign shall not exceed 100 square feet or one (1) square foot for each ten (10) feet of street frontage contained in such organization's lot or lots on which such sign is located (where such sign is located on a corner lot, the longer only of the two street frontages owned by such organization shall be counted), whichever shall be the smaller. Further, in the case of an indirectly lighted sign, no such indirectly lighted sign shall be permitted which faces the front or side lot line of a lot in residential district where the sign is within 100 feet of such lot line.

E.   Entranceway sign:

1.   Area: One (1) square foot of sign for one (1) foot of setback, measured from the centerline of the fronting street with a maximum of twenty-four (24) square feet. Setback is to be measured to the leading edge of the sign.

2.   Height: The height of the sign may not exceed ten (10) feet.

3.  Placement: Not less than ten (10) feet from any street right-of-way and only in yards adjacent to streets at the entrance to the subdivision, apartment complex, condominium development or permitted institution.

(ord. no. 369 eff. June 26, 1981; ord. no. 541 eff. March 19, 1994; ord. no. 653 eff. May 17, 2002)

**15.952**   **2. Cluster Districts CR-6, Apartment Districts AR-7 and AR-8; signs permitted.**

A.  Any sign permitted and as regulated in Residential Districts R-1 through R-5.

B.  One unlighted or indirectly lighted sign not exceeding 12 square feet in area which identifies a multiple-family building or group of buildings in the same project.

C.  Entranceway sign:

1.  Area: One (1) square foot of sign for one (1) foot of setback, measured from the centerline of the fronting street with a maximum of twenty-four (24) square feet. Setback is to be measured to the leading edge of the sign.

2.  Height: The height of the sign may not exceed ten (10) feet.

3.  Placement: Not less than ten (10) feet from any street right-of-way and only in yards adjacent to streets at the entrance to the subdivision, apartment complex, condominium development or permitted institution.

(ord. no. 369 eff. June 26, 1981; ord. no. 653 eff. May 17, 2002)

**15.953**   **3. Agricultural District (AG) and Recreational District (REC); signs permitted.**

A.  Any sign permitted and as regulated in the R-1 through R-5 Districts.

B.  One ground sign not exceeding 25 square feet in area for any permitted agricultural or recreational use provided the sign is used only for the

purpose of identifying the name of the establishment or organization, and further provided that residential dwelling units are excluded from this provision.

C.  One wall sign shall be permitted on each wall facing an adjacent public street for each separate business, with a maximum of two such signs for each business and additional informational or directional signs shall be permitted provided that each sign is attached parallel to the wall of the building and further that the total area of all signs attached to one wall of a building does not exceed 20 percent of the area of that side of the building.

D.  Ground or projecting directional signs not exceeding five square feet in area shall be permitted to provide information such as the location of parking areas or service areas, intended to direct traffic already on the premises.

(ord. no. 369 eff. June 26, 1981; ord. no. 653 eff. May 17, 2002)

**15.954**   **4. Professional Office District PO and General Office District GO; signs permitted.**

A.  Any sign permitted and as regulated in Residential Districts R-1 through R-5.

B.  One ground sign shall be permitted per building not to exceed 25 square feet in area.

C.  One wall sign shall be permitted on each wall facing an adjacent public street for each separate business, with a maximum of two such signs for each business and additional informational or directional signs shall be permitted provided that each sign is attached parallel to the wall of the building and further that the total area of all signs attached to one wall of a building does not exceed 20 percent of the area of that side of the building.

15.954

15.957

D.   Ground or projecting directional signs not exceeding five square feet in area shall be permitted to provide information such as the location of parking areas or service areas, intended to direct traffic already on the premises.

E.   One projecting sign shall be permitted per building, not to exceed 12 square feet in area.

F.   Entranceway sign:

1.   Area: One (1) square foot of sign for one (1) foot of setback, measured from the centerline of the fronting street with a maximum of twenty-four (24) square feet. Setback is to be measured to the leading edge of the sign.

2.   Height: The height of the sign may not exceed ten (10) feet.

3.   Placement: Not less than ten (10) feet from any street right-of-way and only in yards adjacent to streets at the entrance to the subdivision, apartment complex, condominium development or permitted institution.

(ord. no. 369 eff. June 26, 1981; ord. no. 653 eff. May 17, 2002)

**15.955   5. Neighborhood Commercial District C-1; signs permitted.**

A.   Any sign permitted and as regulated in Residential Districts R-1 through R-5.

B.   One ground sign shall be permitted per building not to exceed 32 square feet in area.

C.   One wall sign shall be permitted on each wall facing an adjacent public street for each separate business with a maximum of two such signs for each business and additional informational or directional signs shall be permitted provided that each sign is attached parallel to the wall of the building and further that the total area of all signs attached to one wall of a building does not exceed 20 percent of the area of that side of the building.

D.   Ground or projecting directional signs not exceeding five square feet in area shall be permitted to provide information such as the location of parking areas or service areas, intended to direct traffic already on the premises.

E.   One projecting sign shall be permitted per building not to exceed 20 square feet in area.

(ord. no. 369 eff. June 26, 1981; ord. no. 653 eff. May 17, 2002)

**15.956   6. General Retail District C-2 and Major Commercial District C-3; signs permitted.**

A.   Any sign permitted and as regulated in Residential Districts R-1 through R-5.

B.   One ground sign shall be permitted per building not to exceed 50 square feet in area.

C.   One wall sign shall be permitted on each wall facing an adjacent public street for each separate business with a maximum of two such signs for each business and additional informational or directional signs shall be permitted provided that each sign is attached parallel to the wall of the building and further that the total area of all signs attached to one wall of a building does not exceed 20 percent of the area of that side of the building.

D.   Ground or projecting directional signs not exceeding five square feet in area shall be permitted to provide information such as the location of parking areas or service areas, intended to direct traffic already on the premises.

E.   One projecting sign shall be permitted per building not to exceed 20 square feet in area.

(ord. no. 369 eff. June 26, 1981; ord. no. 653 eff. May 17, 2002)

**15.957   7. General Industrial District GI; signs permitted.**

A.   Any sign permitted and as regulated in Residential Districts R-1 through R-5.

B. One ground sign shall be permitted per building, not to exceed an area of six square feet for each ten feet of street frontage on which street said sign is located, or the longer of two frontages when said sign is located on a corner, and further providing that the maximum area for any free-standing sign shall be 100 square feet.

C. One wall sign shall be permitted on each wall facing an adjacent public street for each separate business with a maximum of two such signs for each business and additional informational or directional signs may be attached parallel to the wall of the building and further that the total area of all signs attached to one wall of a building does not exceed 20 percent of the area of that side of the building.

D. Ground or projecting directional signs not exceeding five square feet in area shall be permitted to provide information such as the location of parking areas or service areas, intended to direct traffic already on the premises.

E. One projecting sign shall be permitted per building not to exceed 50 square feet in area.

F. Freestanding off-premises advertising signs not exceeding 672 square feet in area shall be permitted when located at least 100 feet but not more than 1,000 feet from the edge of the right-of-way of US-31, provided that such off-premises advertising signs shall not be erected closer than 1,000 feet to another off-premises advertising sign on the same side of the highway.

G. Entranceway sign:

1. Area: One (1) square foot of sign for one (1) foot of setback, measured from the centerline of the fronting street with a maximum of twenty-four (24) square feet. Setback is to be measured to the leading edge of the sign.

2. Height: The height of the sign may not exceed ten (10) feet.

3. Placement: Not less than ten (10) feet from any street right-of-way and only in yards adjacent to streets at the entrance to the subdivision, apartment complex, condominium development or permitted institution.

(ord. no. 369 eff. June 26, 1981; ord. no. 653 eff. May 17, 2002)

**15.958  8. PUD, Planned Unit Development.**

In considering signage proposed as part of a PUD development, the Planning Commission and City Council shall use as a guide the respective regulations contained herein for the intended and permitted use the property located within the PUD.
(ord. no. 653 eff. May 17, 2002)

## ARTICLE FIFTEEN (15)

**15.975**                    **FENCES**

**15.990  Installation permit; restrictions.**

Sec. 15.100. Fences on all lots of record in all residential districts which enclose property are permitted in any yard, subject to the following conditions:

1. No fence shall be erected prior to the issuance of an installation permit. Fences projecting into a front yard or a designated side yard facing a street shall be reviewed by the Building and Zoning Administrator prior to issuance of a permit. The following restrictions shall apply to fences in front or designated side yards abutting a street:

A. The fences shall be residential in nature and intent. Farm-type fences shall be excluded

FILED

2005 FEB 16 A 9:58

MUSKEGON COUNTY

**J. ADAM BEHRENDT**
JBEHRENDT@BODMANLLP.COM
248-743-6068

October 8, 2004

BODMAN LLP
SUITE 500
201 W. BIG BEAVER ROAD
TROY, MICHIGAN 48084
248-743-6002 FAX
248-743-6000

**VIA FACSIMILE AND FIRST CLASS MAIL**

Douglas M. Hughes
Williams, Hughes, Sininger & Stapleton, PC
120 W. Apple Ave.
PO Box 599
Muskegon, MI 49443



Re:   Lamar Advertising Company - Billboard Located at 2780 Henry Street

Dear Doug:

We appreciate your timely response to our September 29, 2004 letter. As we set forth in our correspondence to you, we do not interpret the City of Norton Shores" sign ordinance to require Lamar Advertising Company to seek the issuance of a variance for the restoration of its sign face. Accordingly, we respectfully request that you set forth the basis upon which you rely in support of the City's position that Lamar must first obtain a variance for the work it intends to perform.

Moreover, we attach a copy of a letter that our client has received from Richard J. Maher of the City for your review. As set forth in his letter, Mr. Maher has advised Lamar that it must also seek a variance for the setback of its existing, non-conforming billboard. We do not understand the basis for the City's request and do not believe that it is in accord with the law of non-conforming uses in Michigan. Additional, we do not understand the basis for Mr. Maher's statement that the proper setback for a sign in the C-2 General Retail District is twenty-five feet. We also request that you provide us with the basis for the City's position.

Finally, we are uncertain as to the reason why Mr. Maher makes reference to the 1993 variance request and related documents. Although Lamar is willing to consider the possible consolidation of the two Lamar billboards identified in our prior letter into one billboard at the north-edge of 2780 Henry Street, the proposed resolution that Mr. Maher attaches would not provide Lamar with a setback similar to that which it currently enjoys as to its existing billboards. Further, such a consolidation, as set forth in the resolution, would only allow Lamar to use one side of the billboard and not the other (resulting in a loss of one face). If you believe that we have misunderstood the intent of Mr. Maher's reference to these documents or that the City is willing to amend the proposed resolution, please let us know.

We look forward to your response.

Douglas M. Hughes
October 8, 2004
Page 2

Very truly yours,

J. Adam Behrendt

JAB/vjb

2005 FEB 15   A 9: 58

FILED

Back to Web Site

## City of Norton Shores

**Planning Commission Minutes - November 9, 2004**

A regular meeting of the Norton Shores Planning Commission was held on Tuesday, November 9, 2004 at 7:30 p.m. in the Norton Shores Branch Library, 705 Seminole Road.

Present:     Chairman Bailey, Commissioners Bolhuis, Day, Link, Trygstad and VanDyke; also Rob Bilkie, Jim Murphy, Norm Hosko, Doug Hughes and Lynne Fuller

Excused:     Commissioners Lathrop, Lester and Otto

04-P45       <u>Minutes</u>

Commissioner Bolhuis moved to adopt the minutes of the October 19, 2004 Planning Commission meeting. The motion was supported by Commissioner Link and carried unanimously.

04-P46       <u>Consent Agenda</u>

Commissioner Link moved to adopt the Consent Agenda, which consisted of a) Resolution scheduling a public hearing date of December 14, 2004 to consider a request from Johnson Technologies for a special use permit for property at 6060 Norton Center Drive; and b) Resolution scheduling a public hearing date of December 14, 2004 to consider a request from Great Lakes Business Center for a special use permit for property at 800 Ellis Road. The motion was supported by Commissioner VanDyke and carried unanimously.

04-P47       <u>Public Hearing – Special Use Permit - Greg Robillard, 6361 Henry Street</u>

The City Clerk certified the publishing and mailing of the notice of public hearing.

A public hearing was held. Mr. Rudy Chmelar encouraged the Commission to apply Conservation Cluster Development requirements for any future development of the property.

Commissioner Trygstad moved to adopt a resolution recommending to the City Council that a special use permit be granted to Greg Robillard for R-3 Single Family Residential usage in an R-5 Single Family Residential district at 6361 Henry Street with the stipulation that Conservation Cluster Development (Ordinance 653) be applied to any future development of the property. The recommendation for approval was based on the following reasons: 1) The lots have sanitary sewer infrastructure; and 2) Many of the lots in the area have similar dimensions. The motion was supported by Commissioner Bolhuis and carried unanimously.

Commissioner Trygstad moved to adopt a resolution recommending to the City Council that permission be granted to Greg Robillard to divide the property at 6361 Henry Street with the stipulation that Conservation Cluster Development (Ordinance 653) be applied to any future development of the property. The motion was supported by Commissioner Bolhuis and carried unanimously.

P04-48    Public Hearing – Special Use Permit – Rockford Development, 6473 Harvey Street

The City Clerk certified the publishing and mailing of the notice of public hearing.

A public hearing was held. No one objected to the request.

Commissioner Day moved to adopt a resolution recommending to the City Council that a special use permit be granted to Rockford Development for professional office usage in a PUD Planned Unit Development district for portions of the property at 6473 Harvey Street. The recommendation for approval was based on the fact that the proposal is in keeping with the intentions of the Master Plan. The motion was supported by Commissioner VanDyke and carried unanimously.

Commissioner Day moved to adopt a resolution recommending to the City Council that permission be granted to Rockford Development to divide the property at 6473 Harvey Street in accordance with the submitted plan. The motion was supported by Commissioner VanDyke and carried unanimously.

Commissioner Day moved to adopt a resolution granting site plan approval to Rockford Development for the construction of a professional office complex on portions of the property at 6473 Harvey Street, including various site improvements, with the following conditions:  1) Final utility and storm water drainage plans must be approved by the Department of Public Works prior to building permit issuance; 2) The billboard on site will be permanently removed; 3) The freestanding sign along Harvey Street will be limited to the 55 square foot size shown and the campus directional signs will be limited to five (5) square feet; 4) Access around the building meeting International Fire Code requirements will be provided; 5) All approved site work will be completed prior to the issuance of a Certificate of Occupancy by the City; and 6) The requested special use permit will be granted by the City Council.  The motion was supported by Commissioner VanDyke and carried unanimously.

P04-49     Public Hearing – Special Use Permit – Main Street Development, 1484 Ellis Road

The City Clerk certified the publishing and mailing of the notice of public hearing.

A public hearing was held.  No one objected to the request.

Commissioner Bolhuis moved to adopt a resolution recommending to the City Council that a special use permit be granted to Main Street Development for retail commercial usage in a PUD Planned Unit Development district for portions of the property at 1484 Ellis Road.  The recommendation for approval was based on the following reasons:  1) The proposal is in keeping with the Master Plan; and 2) The development seems to fit well in the neighborhood.  The motion was supported by Commissioner Trygstad and carried unanimously.

Commissioner Bolhuis moved to adopt a resolution granting site plan approval to Main Street Development for the construction of commercial/office buildings on portions of the property at 1484 Ellis Road, including various site improvements, in accordance with the submitted plan with the following conditions:  1) Final utility plans will be approved by the Department of Public Works prior to building permit issuance; 2) All approved site work will be

City of Norton Shores

completed prior to the issuance of a Certificate of Occupancy by the City; and 3) The requested special use permit will be granted by the City Council.  The motion was supported by Commissioner Day and carried unanimously.

**04-P50          Zone Change – Prudential Clyde Hendrick, 924 and 960 Hendrick Road**

Commissioner VanDyke moved to remove this item from the table.  The motion was supported by Commissioner Link and carried unanimously.

Commissioner VanDyke moved to postpone this issue.  The motion was supported by Commissioner Day and carried unanimously.

**04-P51          Variance – Lamar Advertising, 2780 Henry Street**

Commissioner Day moved to adopt a resolution recommending to the Zoning Board of Appeals that the request from Lamar Advertising for a variance to reconstruct an off-premise advertising sign on the property at 2780 Henry Street, located in a C-2 General Retail district as opposed to the GI General Industrial district required by Ordinance be denied.  The recommendation for denial was based on the fact that the applicant is renovating, reconstruction and altering an existing non-conforming sign which is prohibited by the Zoning Ordinance.  The motion was supported by Commissioner VanDyke and carried unanimously.

Meeting adjourned at 8:15 p.m.

FILED

2005 FEB 16 A 9: 58

MUSKEGON COUNTY CLERK

JAN.28.2005  11:57AM  LAMAR  MUSKEGON  NO.054  P.2/2

CITY OF NORTON SHORES
ZONING BOARD OF APPEALS
November 24, 2004

A regular meeting of the Norton Shores Zoning Board of Appeals was called to order on Wednesday, November 24, 2004, at 3:30 p.m. in the Conference Room, Norton Shores Municipal Building, 4814 Henry Street.

Present:       Chairman McCabe, Board Members Hill, Platt, Rood, Tidball and VanNunen; also Rob Bilkie, Doug Hughes and Lynne Fuller

Excused:     Board Member White

04-A27       Minutes

Board Member Platt moved to adopt the minutes of the meeting of October 27, 2004. The motion was supported by Board Member VanNunen and carried unanimously.

04-A28       Variance Request – Lamar Advertising, 2780 Henry Street

The City Clerk certified the publishing and mailing of the notice of public hearing.

A public hearing was held. No one objected to this request.

Board Member Hill moved to adopt a resolution supporting the decision of Richard Maher, Community Development Director, that a building permit is required for Lamar Advertising to complete work on the billboard structure at 2780 Henry Street. The motion was supported by Board Member Tidball and carried unanimously.

Board Member Rood moved to adopt a resolution denying the request for a variance to allow Lamar Advertising to reconstruct an off-premise advertising sign on the property at 2780 Henry Street, located in a C-2 General Retail district as opposed to the GI General Industrial district required by Ordinance. The motion for denial was based on the following facts: 1) The applicant is renovating, reconstructing and altering an existing nonconforming sign, which is prohibited by Ordinance; and 2) The Planning Commission unanimously recommended denial of the request. The motion was supported by Board Member Hill and carried unanimously.

The meeting adjourned at 4:15 p.m.

Lynne A. Fuller, City Clerk



# City of Norton Shores

Printer-frien

**Home**

**Snow Plowing Operations**

**FY 2005 Revenue/Expenditures**

**Millage/Budget Cuts**

**Meeting Schedule**

**Agenda and Minutes**

**City Officials**

**Charter Commission**

**City Departments**

**Employment**

**News**

**Traffic/Pedestrian Safety**

**Homeland Security**

**Tourism**

**FAQ-City Services**

**Helpful Links**

**Comments**

**Search**

GO

⦿ Full Site
○ This Section

**Search Tips**

Printer-friendly Version

## Zoning Board of Appeals - January 26, 2005

A regular meeting of the Norton Shores Zoning Board of Appeals was called to order on Wednesday, January 26, 2005, at 3:30 p.m. in the Conference Room, Norton Shores Municipal Building, 4814 Henry Street.

Present: Chairman McCabe, Board Members Platt, Tidball and White; also Rob Bilkie, Doug Hughes and Lynne Fuller

Excused: Board Members Hill, Rood and VanNunen

### 05-A01 Minutes

Board Member Tidball moved to adopt the minutes of the meeting of November 24, 2004. The motion was supported by Board Member White and carried unanimously.

### 05-A02 Variance Request -- Port City Sign, 5341 Grand Haven Road

The City Clerk certified the publishing and mailing of the notice of public hearing.

A public hearing was held. No one objected to this request.

Board Member Tidball moved to adopt a resolution granting a variance to allow Port City Sign to erect one (1) 50 square foot freestanding ground sign on the property at 5341 Grand Haven Road as opposed to the two (2) 25 square foot freestanding ground signs permitted by Ordinance. The motion for approval was based on the following reasons: 1) The single sign would be more aesthetically attractive than two signs located close together on what is only an 84' wide lot; and 2) The proposed

signage would be no greater than what is already permitted by Ordinance. The motion was supported by Board Member Platt and carried unanimously.

The meeting adjourned at 3:40 p.m.



Powered by
gov
officials.com

Approved, SCAO

| | | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|---|

| STATE OF MICHIGAN | | | CASE NO. |
|---|---|---|---|
| 14th | JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | **SUMMONS AND COMPLAINT** | 05- 43703    -NO |

**Court address**

990 Terrace St., Muskegon, Michigan 49442-3357

**Court telephone no.**

(231) 724-6251

Plaintiff name(s), address(es), and telephone no(s).

Lamar OCI North Corporation

4898 S. Quarterline Road
Muskegon, MI 49443-0505
(231) 733-7679

v

Plaintiff attorney, bar no., address, and telephone no.

J. Adam Behrendt (P58607)

Bodman  LLP
201 West Big Beaver Road, Suite 500
Troy, MI 48084      (248) 743-6000

Defendant name(s), address(es), and telephone no(s).

City of Norton Shores, a Michigan municipal corporation

**THIS CASE ASSIGNED TO
JUDGE TIMOTHY G. HICKS**

4814 Henry St.
Muskegon, MI 49442

---

**SUMMONS**   **NOTICE TO THE DEFENDANT:**  In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>02-16-05 | This summons expires<br>05-18-05 | Court clerk<br>*Karen D. Buie* |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.

---

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members  of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members  of the parties has been previously  filed in _____ Court.

The action  ☐ remains    ☐ is no longer     pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☑ There is no other pending or resolved civil action  arising out of the same transaction or occurrence as alleged in the complaint/

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action  ☐ remains    ☐ is no longer     pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Muskegon County | Defendant(s) residence (include city, township, or village)<br>Muskegon County |
|---|---|
| Place where action arose or business conducted<br>Muskegon County | |

02/15/2005
_____
Date

_____
Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01  (6/03)  **SUMMONS AND COMPLAINT**   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

| PROOF OF SERVICE | SUMMONS AND COMPLAINT |
|---|---|
| | Case No. |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NON-SERVICE

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2)], and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

| Service fee | Miles traveled | Mileage fee | Total fee | Signature |
|---|---|---|---|---|
| $ | | $ | $ | |
| | | | | Title |

Subscribed and sworn to before me on _____, _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                              Deputy court clerk/Notary public

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _2·23·05_
Day, date, time

_____ on behalf of _____
Signature

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MUSKEGON

LAMAR OCI NORTH CORPORATION,

      Appellant/Plaintiff,

vs.

CITY OF NORTON SHORES,

      Appellee/Defendant.

Case No. 05-43703-NO

HON. TIMOTHY G. HICKS

_____/

James J. Walsh (P-27454)
J. Adam Behrendt (P-58607)
Bodman LLP
Attorneys for Appellant/Plaintiff
201 W. Big Beaver Rd., Ste. 500
Troy, MI  48084
(248) 743-6000

Douglas M. Hughes (P-30958)
Williams, Hughes & Stapleton, PLLC
Attorneys for Appellee/Defendant
120 W. Apple Ave., P.O. Box 599
Muskegon, MI  49443-0599
(231) 726-4857

_____/

## APPEARANCE

PLEASE ENTER my Appearance on behalf of the Appellee/Defendant, City of Norton

Shores, in the above-referenced matter.

Counsel please take notice of my Appearance.

Dated: February 24, 2005

WILLIAMS, HUGHES & STAPLETON, PLLC

By _____
    Douglas M. Hughes
    Attorneys for Appellee/Defendant

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF MUSKEGON

LAMAR OCI NORTH CORPORATION,

          Appellant/Plaintiff,

vs.

CITY OF NORTON SHORES,

          Appellee/Defendant.

Case No. 05-43703-NO

HON. TIMOTHY G. HICKS

_____/

James J. Walsh (P-27454)
J. Adam Behrendt (P-58607)
Bodman LLP
Attorneys for Appellant/Plaintiff
201 W. Big Beaver Rd., Ste. 500
Troy, MI 48084
(248) 743-6000

_____/

Douglas M. Hughes (P-30958)
Williams, Hughes & Stapleton, PLLC
Attorneys for Appellee/Defendant
120 W. Apple Ave., P.O. Box 599
Muskegon, MI 49443-0599
(231) 726-4857

## **PROOF OF SERVICE**

STATE OF MICHIGAN    )
                       ) ss.
COUNTY OF MUSKEGON )

      Rosemary Tuleja, being first duly sworn, deposes and says that she is not an interested party in the above entitled matter and that she served a copy of the Appearance upon the following: James J. Walsh and J. Adam Behrendt of Bodman LLP, 201 W. Big Beaver Rd., Ste. 500, Troy, MI 48084, by placing the same in a properly addressed envelope to their address and depositing the same in the United States mail, first class postage fully pre-paid this 24th day of February, 2005.

                                       _Rosemary Tuleja_
                                       Rosemary Tuleja

Subscribed and sworn to before me
this 24th day of February, 2005.

_____
Notary Public
My Commission Exp. _8-30-07_
Acting in Muskegon County